IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GRAIN MILLERS, INC., a Delaware                          07-CV-1065-AS
corporation,

                                                        OPINION AND
                            Plaintiff,                        ORDER

            v.

PACIFIC FLEXPAK CO., a California
company d/b/a FULTON PACIFIC
COMPANY, a fictitious California
business name,

                            Defendant.
_____

ASHMANSKAS, Magistrate Judge:

        This case arises from a commercial dispute over allegedly non-conforming product that

Plaintiff Grain Millers, Inc. ("Grain Millers"), bought from Defendant Pacific Flexpak Co.

OPINION & ORDER

{KPR}

("Pacific Flexpak").  The issue presently before the court is whether this case shall remain filed in the District of Oregon's Portland Division or be transferred to its Eugene Division.  The court concludes that this case should be transferred to the Eugene Division in accordance with Local Rule ("LR") 3.4.

## BACKGROUND

The allegations in the pleadings, as well as the representations in Grain Millers' brief, provide the background for the place of filing issue.  Grain Millers filed suit against Pacific Flexpak for breach of warranty, products liability, negligence, and indemnification in the Portland Division of the United States District Court for the District of Oregon.  Grain Millers, a Delaware corporation, is a specialty grain processor with its principal place of business in Minnesota; it does business in Oregon through operation of a grain processing mill in Eugene, Oregon.  Pacific Flexpak is a California corporation doing business as Fulton Pacific Company. It designed, sold, and arranged for delivery to Grain Millers' Eugene mill of 2,754 grain storage totes.  Each tote holds approximately 2,000 pounds of grain product and is fitted with a discharge spout constructed of plasticized material.  Grain Millers filled the totes with grain product and shipped the filled totes from its Eugene mill to various commercial customers, including customers within Oregon.  Grain Millers also used some of the totes for grain storage at its Eugene mill.

Approximately one month after receiving the totes, Grain Millers discovered foreign material in the grain that it had stored in the totes.  Grain Millers determined that plastic from the discharge spouts of some of the totes had delaminated, thereby contaminating the grain stored in those totes.  Grain Millers notified Pacific Flexpak of the problem by telephone and e-mail.  The

OPINION & ORDER

{KPR}

next day, Pacific Flexpak sent a letter to Grain Millers in which it explained that the material

used to construct the totes met or exceeded United States Food and Drug Administration

requirements.  Subsequently, Grain Millers received complaints from customers claiming to have

found plastic in the grain shipped in those totes.  Grain Millers advised those customers to return

the grain to its Eugene facility, which they did.  Grain Millers thereafter received and paid

damage claims from three customers, two of which are located in Multnomah County, Oregon,

and the third of which is located in Boise, Idaho.

In its complaint, Grain Millers bases jurisdiction on diversity under 28 U.S.C. § 1332(a)

and venue in this district on 28 U.S.C. § 1391(a).  Pacific Flexpak accepts Grain Millers'

jurisdiction and venue statements.

## LEGAL STANDARDS

When jurisdiction is based on diversity, a civil action may be brought only in the district

where the defendant resides or the district in which a "substantial part of the events or omissions

giving rise to the claim occurred ***."  28 U.S.C. § 1391(a). As for venue, "[f]or the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought."  28 U.S.C. §

1404(a).  Also, "[t]he district court of a district in which is filed a case laying venue in the wrong

division or district shall dismiss, or if it be in the interest of justice, transfer such case to any

district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Each statute applies to distinctly different circumstances.  The threshold issue under

§ 1404(a) is whether the plaintiff's claim could have been filed in the judicial district to which

transfer is sought.  *Phoenix Solutions, Inc. v. Sony Electronics, Inc.*, 2007 WL 4357602, at *3

OPINION & ORDER

{KPR}

(N.D. Cal. Dec. 11, 2007); *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 789

(S.D. Tex. 2005), *citing In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004). *See also Hatch*

*v. Reliance Ins.*, 758 F.2d 409, 414 (9th Cir. 1985) (under § 1404(a), "[i]n determining whether

an action 'might have been brought' in a district, the court looks to whether the action initially

could have been commenced in that district."). In contrast, § 1406(a) applies when venue is

improper in the first instance. *See Capital Bank Intern. Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d

72, 78 & n.4 (D.D.C. 2003) ("Although its amended complaint states that venue is proper here,

Capital Bank requests transfer not under 28 U.S.C. § 1404, which applies when venue is proper

in both the transferor and the transferee forum, but under 28 U.S.C. § 1406(a), which applies

only when venue is improper in the transferor forum.").

Considerations in applying the two statutes also differ. In deciding a transfer request

under § 1404(a), the plaintiff's choice of forum and the convenience of the parties and witnesses

are primary considerations. The court also examines ease of access to sources of proof, local

interest in the controversy, familiarity of each forum with applicable law, the avoidance of

unnecessary problems in conflict of laws, relative congestion in each forum, the location where

the relevant agreements were negotiated and executed, possibility of view of premises, the

respective parties' contacts with the forum, the unfairness of burdening citizens in an unrelated

forum with jury duty, and the contact relating to the plaintiff's claims in the chosen forum. *Jones*

*v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Jonathan Browning, Inc. v.*

*Venetian Casino Resort, LLC*, 2007 WL 4532214, at *6 (N.D. Cal. Dec. 19, 2007), *citing*

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Sejus Corp.*

*v. Baker Electronics, Inc.*, 2000 WL 776422, at *6 (D. Or. Apr. 17, 2000), *citing Gulf Oil Corp.*

OPINION & ORDER

{KPR}

*v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  *See also Wright v. Jack Hozak Co., Inc.*, 2000 U.S. District Lexis 17383, at *9-10 (D. Or. Oct. 11, 2000) (noting the moving party's "heavy burden" under § 1404(a) to show that factors warranting transfer of the case to district different than the one in which plaintiff chose to file the case).

When applying § 1406(a), however, the sole consideration is whether transfer, rather than dismissal, is "in the interests of justice."  Thus, "[i]f an action is filed in the improper venue, the court is required to dismiss the action or transfer it to a judicial district or division where venue is authorized."  *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 2008 WL 410088, at *3 (D. Or. Feb. 12, 2008).  The court will consider whether the relevant statute of limitations has expired, whether judicial economy would be promoted, whether the action would be re-filed if the case were dismissed, and the relative injustice imposed on the plaintiff and defendant. William W. Schwartzer, A. Wallace Tashima & James M. Wagstaffe, *Rutter Group Practice Guide:  Fed. Civ. Pro. Before Trial* ¶ 4:578 (Rutter Group 2007).  However, transfer is preferred over dismissal.  *Id.* at  ¶ 4:577 (distinguishing between "convenience" transfers under 1404(a) ¶ 4:545 and "wrong court" transfers under 1406(a) ¶ 4:553).

The District of Oregon has enacted rules governing the filing of cases within the district, pursuant to its statutory authority.  *See* 28 U.S.C.S. § 137 (LexisNexis 2001) ("The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court").  *See also* Fed. R. Civ. P. 83(a)(1) (expressly authorizing district courts to "make and amend rules governing its practice.").  To "distribute the judicial work and to align counties for juror management purposes," the district has established four divisions where cases

OPINION & ORDER

may be filed: Portland, Eugene, Medford, and Pendleton.  LR 3.3.  Each of the four divisions

encompasses a different group of Oregon counties, *id.*, and cases "arising in" a county assigned

to a specific division "must be filed" in that division.  LR 3.4(a).  The city of Eugene is located in

Lane County and, thus, within the Eugene Division.  Under LR 3.4(c), "[i]f a case is filed in any

division other than the one required by LR 3.4(a), the Court may reassign the case to the

appropriate division on its own motion or that of any party."

**DISCUSSION**

**I.**     **Place of Filing**

Grain Millers improperly filed this action in the Portland Division of the District of

Oregon.  The events giving rise to its claims, to the extent that they occurred in Oregon,

originated at or came into being through Grain Millers' Eugene mill located in Lane County.

Lane County is served by the district's Eugene Division.  Based on the parties' representations,

the court must conclude:  Pacific Flexpak shipped the totes to Grain Millers at its Eugene mill;

Grain Millers filled the totes with grain product at its Eugene mill and shipped the filled totes to

its customers from the Eugene mill; it used some of the totes to store grain at its Eugene mill;

Grain Millers' employees discovered the alleged delamination problem with the totes at its

Eugene mill; Grain Millers exchanged communications with Pacific Flexpak about the alleged

delamination through its Eugene mill; customers submitted their complaints about the alleged

problem to Grain Millers at its Eugene mill; and Grain Millers received at its Eugene mill the

returned contaminated product from its customers.  Within the District of Oregon, only two

relevant events occurred outside Lane County:  the receipt of the allegedly non-conforming

product by two of Grain Millers' customers, both located in the Portland Division.  Given the

OPINION & ORDER

{KPR}

extensive factual connection of Grain Millers' claims to the events occurring in the Eugene Division, these two events are not sufficient to support a conclusion that Grain Millers' claims arose in the Portland Division.

Furthermore, the location of intended performance generally determines the proper venue.  *See Decker Coal Company v. Commonwealth Edison Company*, 805 F.2d 834, 842 (9th Cir. 1986) ("We believe that the spirit of § 1391(a) is better served in this case if venue for a claim based on breach of contract be the place of intended performance ***.  We favor this rule because the place of performance is determined at the inception of the contract and therefore parties can anticipate where they may be sued."); and *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 2008 WL 410088, at *8 (D. Or. Feb. 12, 2008) (interpreting 28 U.S.C. § 1406(a)) ("If the claim is for breach of contract, the breach occurs where the plaintiff was to receive the benefits due them under the contract.").  Here, the performance contemplated by the parties' business agreement occurred in Eugene when Pacific Flexpak agreed to and did ship the totes to Grain Millers at its Eugene mill.  This is also where the failure of performance occurred.

Accordingly, once Grain Millers chose to file its lawsuit in the District of Oregon, LR 3.4(a)(2) required the lawsuit to be filed in the Eugene Division because the claims arose from events occurring in Lane County.  By filing its case in the Portland Division, Grain Millers filed in the wrong division.

## II.    __Inter-Divisional Transfer__

In its brief, Grain Millers does not contest, or at least does not directly address, that it filed its lawsuit in the wrong division.  Instead, it argues that the Portland Division is more convenient for the parties, witnesses, and attorneys, and it urges that the court "may and should

OPINION & ORDER

{KPR}

exercise its discretion to keep the case in the Portland Division as is allowed under LR 3.4(c)."
Grain Millers relies on 28 U.S.C. § 1404(a), which provides: "[f]or the convenience of parties
and witnesses, in the interest of justice, a district court may transfer any civil action to any other
district or division where it might have been brought," to support its interpretation of LR 3.4(c).

However, applying § 1404(a) analysis to interpret LR 3.4(c) is incorrect, in this case, for
two reasons.  First, prior decisions in this district have read LR 3.4(a)'s mandate to strictly
require transfer of an action filed in the wrong division.  *See, e.g.*, *Baker v. Kaman Aerospace
Corporation,* 2002 U.S. Dist. LEXIS 21459, at *1 (D. Or. Oct. 31, 2002) (on transferring an
action from the Portland Division to the Medford Division:  "To the extent that this action arises
in Oregon, it arises in the Medford Division."); *Siskiyou Regional Educ. Project v. U.S. Forest
Service*, 2005 WL 2675114, at *1-2 (D. Or. Oct. 20, 2005) (granting defendant's motion to
transfer case from the Portland Division to the Medford Division as "the proper division"
because the case arose out of and challenged activities occurring within that division).  This
district, therefore, has applied LR 3.4(a)'s language exactly as it is stated, consistent with the
rule's twin purposes of distributing the judicial workload and effectively managing juror pools
within the district.

Second, a § 1404(a) analysis might apply to Grain Millers' request if the Portland
Division were "any other district or division where [the action] might have been brought," but it
is not such a division.  Having elected to file its action in Oregon, LR. 3.4(a) required Grain
Millers to file in the Eugene Division.  Under this local rule, enacted pursuant to the district's
statutory authority to make rules governing its practice and assigning its business among its
judges, the Eugene Division, not the Portland Division, is the only "division where it might have

OPINION & ORDER

{KPR}

been brought," as contemplated by 28 U.S.C. §1404(a).[1]

Because this action was filed in the wrong division, Grain Miller's request under LR 3.4(c) is more appropriately guided by the considerations underlying § 1406(a), because both rules serve a similar purpose:  to avoid the harsh result of a dismissal and instead permit transfer of a "wrong court" case to the appropriate venue.  Under § 1406(a), a case "laying venue in the wrong division" either must be dismissed or, "in the interests of justice," transferred to the district in which it could have been brought.[2]

Here, transfer of Grain Millers' action to the Eugene Division is clearly in the interests of justice.  The pleadings demonstrate that intra-district venue is proper in the Eugene Division, that Grain Millers would re-file the case if this action were dismissed, that transfer would be more efficient for the court than refiling, and that the parties would benefit from uninterrupted judicial processing of the case.  Therefore, transfer of this case from the Portland Division to the Eugene Division is appropriate.

//

//

//

//

---

[1]  District courts' authority to enact local rules allocating venue within a district is consistent with 28 U.S.C. § 137 and not prohibited by 28 U.S.C. § 1393.  William W. Schwartzer, et al., *supra*, at ¶ 4:385.

[2]  Although Grain Millers stresses the deference to be given its choice of forum, that deference applies only when a plaintiff has chosen between two proper venues; it does not apply here, where the case was originally filed in an improper venue, the Portland Division.

OPINION & ORDER

{KPR}

## <u>CONCLUSION</u>

Based on the foregoing, this case is TRANSFERRED to the Eugene Division.  IT IS SO

ORDERED.

DATED this 26th day of February, 2008.


                           /s/ Donald C. Ashmanskas
                          Donald C. Ashmanskas
                      United States Magistrate Judge

OPINION & ORDER

{KPR}